**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS**

| | |
|---|---|
| MAXX LYMAN, ON BEHALF OF HIMSELF AND OTHERS SIMILARLY SITUATED<br><br>    Plaintiff,<br><br>vs.<br><br>GLOBE LIFE INC.<br><br>    Defendant. | Case No. 4:23-cv-00911-SDJ |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
GLOBE LIFE'S MOTION TO DISMISS**

## I. INTRODUCTION

Defendant Globe Life Inc.'s (Globe Life or Defendant) motion to dismiss must be denied because the Plaintiff has pled that he received the illegal calls at issue which affirmatively identified themselves as coming from Defendant, Globe Life. Those allegations are to be afforded substantial credit and weight. Defendant's attempt to bootstrap a 12(b)(1) motion for lack of subject matter jurisdiction over a factual dispute over the identity of the caller at such an early stage of the litigation, before any discovery directed into the Plaintiff's allegations more properly the subject of a motion for summary judgment has occurred, must be rejected. So too must Defendant's attempt to employ a 12(b)(6) motion as a backup. Nevertheless, Defendant's contentions in its motion are remarkably unsupported and do not warrant dismissal. As so many other courts have done in other TCPA cases where the defendant claims the plaintiff has sued the wrong caller and that defendant did not place them, this case must be allowed to proceed.

## II. FACTUAL BACKGROUND

The original complaint in this matter was filed on October 13, 2023 against the Defendant, Globe Life Inc. (ECF No. 1). Defendant Globe Life filed an essentially identical motion to dismiss to the instant one on November 15, 2023. (ECF No. 7). Plaintiff amended his complaint on November 21, 2023 to address the deficiencies raised in that motion. (ECF No. 9). In his complaint, the Plaintiff also detailed the investigative process whereby he was able to identify the Defendant as the caller who placed the calls. Specifically, not only has the Plaintiff alleged that he *answered the calls*, in which Globe Life was calling to offer life insurance, but the number was *called back* and in the call back agents of Globe Life were identified. (Am. Compl. ¶ 22–32). This instant motion follows. (ECF No. 11). In it, the Defendant twists a metaphysical doubt as to the Plaintiff's allegedly "threadbare" claims to make a remarkable

contention–that this factual dispute as to the identity of the caller robs this Court of subject matter jurisdiction because the Plaintiff has sued the wrong Defendant. And, in a tacit concession that its claims this Court lacks subject matter jurisdiction themselves lack merit, Defendant falls back on the classic "we didn't do it" defense disguised as a 12(b)(6) motion. One would think that such an attack at the very heart of the case itself would be supported by actual evidence instead of a self-serving affidavit. It's not. This response follows.

### III.  LEGAL STANDARD

The standards for 12(b)(1) challenges for a lack of subject matter jurisdiction are well-settled in this circuit. Notably, there exist two types of 12(b)(1) challenges, each with their corresponding standards: facial and factual challenges. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Confusingly, Defendant does not state in its motion which challenge the Defendant is attempting. A facial challenge goes to the sufficiency of the pleading itself, and in such a motion, the court must take the allegations of the complaint as true and construe them in the light most favourable to the nonmoving party. *Id.* If, however, the defendant mounts a factual challenge, the defendant must submit "affidavits, testimony, or other evidentiary materials" supporting the lack of subject matter jurisdiction. The burden then shifts to the Plaintiff to demonstrate that the court has subject matter jurisdiction. But even when a factual attack is involved, as with a motion under Rule 12(b)(6), a motion under 12(b)(1) should be granted only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Benton v. United States*, 960 F.2d 19, 21 (5th Cir.1992). And, of course, in *Lujan v. Defenders of Wildlife*, the Supreme Court reduced the "constitutional minimum of standing" into "three elements," injury, traceability, and redressability. 504 U.S. 555, 560 (1992).

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests." *Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741, 744 (5th Cir. 2010) (cleaned up). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Connelly*, 809 F.3d at 786–87. After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* A complaint may be dismissed only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. *Twombly*, 550 U.S. at 570.

### IV.    ARGUMENT

A.   *This Court has subject matter jurisdiction because it is inappropriate as a matter of law and because Mr. Lyman has plausibly alleged the illegal calls came from Globe Life.*

As explained above, the Defendant's motion does not state whether it mounts a facial or a factual jurisdictional challenge to the Plaintiff's complaint. However, as the Defendant has submitted an affidavit in support of its argument that this Court lacks subject matter jurisdiction,

3

the Defendant is evidently attempting a factual challenge. And in a factual challenge, the Plaintiff is entitled to submit evidence, such as a declaration, as he does here, evidencing facts which support the exercise of subject matter jurisdiction. *Paterson*, 644 F.2d at 523. Here, Defendant's factual challenge must fail both because it is inappropriate as a matter of law and because the Plaintiff has plausibly alleged that the calls came from the Defendant.

This Court's power to hear cases, its subject matter jurisdiction, derives from Article III of the Constitution, which limits this Court to adjudicating "cases" and "controversies." U.S. CONST. art. III, § 2, cl. 1. In *Lujan*, the Supreme Court distilled the constitutional limits of Article II standing into three distinct elements: injury, traceability, and redressability. 504 U.S. at 560. Defendant challenges only the latter two elements. Importantly, the standard for traceability is that the injury must be "*fairly* traceable to the challenged action of the defendant, and not the result of *independent* action of some third party not before the court." *Id.* (cleaned up). Although requiring "fair" traceability, nothing in the Constitution requires the Plaintiff to make more than a "fair" allegation as to the defendant's identity and connection to the controversy. *Id.*

And although it is unclear, the crux of the Defendant's argument seems to be that the Plaintiff sued the wrong corporate entity, suing Defendant, which is merely a "holding company" that does not "sell insurance" or "engage in the insurance business," instead of suing the (unidentified) Globe Life subsidiary that placed the calls. (Anderson Dec., ECF No. 11-1). But nothing in the Constitution requires a plaintiff to plead with particularity the corporate structure and ownership of the many holding companies and subsidiaries of a defendant. It follows that suing the parent of a subsidiary is sufficient to confer standing to adjudicate the "controversy" before this Court, as pleading of corporate forms and subsidiaries cannot be a constitutional requirement for jurisdiction. Therefore, from a constitutional angle, this case must not be

dismissed because no part of Article III requires the Plaintiff to allege what Defendant claims is required, the precise corporate form, organization, and structure of the entity that placed the call, nor can it, because that concept did not exist at the time of the founding and therefore cannot be a requirement for jurisdiction. Notably, Globe Life does not identify which of its many subsidiaries engaged in the conduct at issue.

"It is inappropriate for the court to focus on the merits of the case when considering the issue of standing." *Grant ex rel. Fam. Eldercare v. Gilbert*, 324 F.3d 383, 387 (5th Cir. 2003). Therefore, even if the Defendant's argument survives from a constitutional perspective, it still fails as a legal matter, because Defendant misconstrues the purpose and elements of standing. The Defendant ignores the Fifth Circuit's counsel and makes a remarkable argument: this Court lacks Article III standing over a defendant who denies, through affidavit, that it committed the conduct at issue and is therefore, strictly speaking, the incorrect party. This argument misconstrues the purpose and elements of standing, which focus on "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Id*.

In essence, the Defendant attempts the classic "we didn't do it" defense by disguising it as a challenge to the Court's subject matter jurisdiction. But, to the extent that the "issue of [subject matter] jurisdiction is intertwined with the merits, district courts should deal with the objection as a direct attack on the merits of the plaintiff's case under either Rule 12(b)(6) or Rule 56" *M.D.C.G. v. United States*, 956 F.3d 762, 768–69 (5th Cir. 2020). Moreover, this Court cannot properly consider the Anderson declaration as evidence because it is a textbook conclusory declaration, merely stating *ipso facto* that the Plaintiff has sued the wrong party without making any attempt to proffer the correct party or provide a contrary explanation for the Plaintiff's allegations, despite being in a position to do so. Shockingly, the declaration does *not*

5

state that that Defendant lacks knowledge of who owns the number at issue, but rather simply denies its being owned by the parent company or used by the parent company's employees.

As will be set forth in more detail below applying the 12(b)(6) standard to the Plaintiff's claims, the allegations in the complaint demonstrate this case should not be dismissed on jurisdictional grounds merely because the Plaintiff has sued the related but allegedly wrong Defendant. Defendant reads the words "fairly" and "independent" out of the Supreme Court's holding in *Lujan*. The Plaintiff's jurisdictional allegations derive from the fact that the calls were answered and that were subsequently called were placed to *identical telephone numbers* where agents stated they were calling "from Globe Life."  (Am. Compl. ¶ 22; Lyman Dec.). By its own admission, "Globe Life is the marketing name for Globe Life Inc. *and its subsidiaries*." GLOBE LIFE, https://home.globelifeinsurance.com/ [https://archive.is/gBXkc] (emphasis added). Defendant's own website markets life insurance, allows visitors to purchase life insurance, and provides a telephone number to call Defendant at, 800-831-1200. *Id.* Its own website demonstrates statements which are directly contradictory to Defendant's declaration that "Globe Life does not issue, sell, *market*, underwrite, or administer insurance policies on behalf of itself or any of its subsidiaries." (Anderson Dec., ECF No. 11-1).

These allegations are more than sufficient to demonstrate a "fair" connection between the conduct, the Defendant, and the controversy. Moreover, the allegations are sufficient to demonstrate that the Defendant was not acting "independently" of the actual tortfeasor in this case. *Lujan*, 504 U.S. at 560. Rather, the actual subsidiary tortfeasor (whomever they are, as they have not been identified, despite Defendant being in a position to identify them), is merely an alter-ego of the Defendant. This is so because, when a parent corporation uses a subsidiary "as a marketing conduit" and thereby attempts to shield itself from liability based on its subsidiary's

6

activities, "the alter-ego test is satisfied" sufficient to pierce the corporate veil, not merely impose subject-matter jurisdiction, a prerequisite to any liability determination. *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (citing *United States v. Toyota Motor Corp.*, 561 F. Supp. 354, 359 (C.D. Cal. 1983)). And, because there is *traceability* to the Defendant and other unidentified entities subject to its control, there must be *redressability* such that a judgment against a parent holding company would likely redress the harm committed by a subsidiary.

Finally, to the extent that this court remains unconvinced, it should permit jurisdictional discovery. "When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Budde v. Ling-Temco Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975). In particular, this jurisdictional discovery must focus on the ownership of the number that called Plaintiff, why the caller stated they were calling from "Globe Life," and the nature, basis, and details of the Defendant's corporate structure.

B.  *This case presents a number of factual disputes more appropriately subject to a trial or at least a motion for summary judgment. Dismissal under Rule 12(b)(6) is therefore inappropriate.*

Rule 12(b)(6) is not an appropriate device for testing the truth of what is asserted in the complaint or for determining whether the plaintiff has any evidence to back up what is in the complaint. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002). However, that's precisely what the Defendant attempts to do here, making a red-herring argument that the Plaintiff has failed to state a claim because it has named the wrong party and because "Globe Life does not . . . sell . . insurance policies." (Anderson Dec., ECF No. 11-1). But that's a "red herring" that begs the question "who did, then?" *See Consol. Grain & Barge, Inc. v. Anny*, No. CIV.A. 11-2204, 2013 WL 486687, at *6 (E.D. La. Feb. 6, 2013).

7

The Defendant, in essence, adopts in its motion the classic "I didn't do it" defense. But such an allegation is more properly the subject of a jury trial or at the very least a motion for summary judgment. Tellingly, the Defendant does *not* deny knowing who placed the calls, supporting Plaintiff's contention that Globe Life knows which one of its unidentified subsidiaries placed the calls but that Globe Life won't identify them. For all intents and purposes, Defendant attempts a smoke-and-mirrors game of corporate ownership to escape liability under the TCPA while simultaneously not disclosing the real party in interest. Defendant, and only the Defendant, is in the best, and indeed, only, position to identify the subsidiary that owns the number and placed the calls. Discovery will bear that out either directly or via a subpoena to the phone carrier. It has not done so and instead elected to throw all its efforts into moving to dismiss the complaint based on allegedly inadequate allegations designed entirely by the Defendant for exactly such a scenario. Defendant cannot be permitted to play games in such a manner.

Indeed, Defendant's own evidence for why it didn't place the calls (which this Court isn't permitted to consider at the motion to dismiss stage anyway), is noticeably lacking and requires the Court to adopt an unproven premise: that Defendant is completely the wrong entity and did not place the calls. Defendant has not alleged any facts to demonstrate that the "Globe Life" sued here is at all legally distinct from the "Globe Life" it claims is only a holding company or if any of its subsidiaries committed the conduct at issue, and the factual basis for these claims are themselves disputed, not the very least of which through Defendant's website. Ultimately, any of Defendant's subsidiary companies that Defendants holds are nothing more than divisions of Defendant that merely have a separate legal existence, which can itself be disregarded as Plaintiff's case arises out of Defendants' subsidiary marketing efforts. *Cf. id.*; *accord Toyota Motor Corp.*, 561 F. Supp. at 359.

8

Here, the Plaintiff pleads facts which permit the court to plausibly determine that the Defendant was responsible for the alleged conduct and that the Defendant acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, the Plaintiff states not only that the caller stated that he was calling from Globe Life but also that the number *was called back* and was connected to an agent of Globe Life, therefore eliminating the possibility that the number was "spoofed." (Am. Compl. ¶ 22–37). Moreover, he has supported these assertions through a declaration of his own. (Lyman Dec.). The complaint's well-pled factual assertions cannot be overcome simply by the Defendant's own conclusory, self-serving affidavit denying liability and claiming the Plaintiff has sued the wrong entity, nor is considering it appropriate on a 12(b)(6) motion.

Likewise, the cases cited by the Defendant for the proposition that this case can be dismissed on a 12(b)(6) motion are easily distinguishable. In *Cunningham v. Daybreak Solar Power, LLC*, the plaintiff received calls which were identified as "The-Solar-Project.com," which were then *transferred* to the defendant. No. 4:22-CV-00599-O, 2023 WL 3985245, at *1 (N.D. Tex. June 13, 2023). On that basis, the Court held that there was no factual support for the contention that the defendant, and not The Solar Project, was directly liable for the calls at issue on the basis that The Solar Project was merely a trade name and no facts to demonstrate the exercise of vicarious liability and therefore dismissed the case. *Id.* at 3. Not so here. The Plaintiff does not plead that he was transferred to Globe Life but rather that he *directly* spoke to an agent of Globe Life. (Lyman Dec.). And, unlike in *Daybreak Solar*, the number was called back and agents were spoke to that stated they were with Globe Life. Moreover, Defendant admits on its website that it uses the "Globe Life" name to offer insurance products purportedly offered only through its subsidiaries.

9

The other cases cited by Defendant here are similarly from distinguishable from this case. In *Cunningham v. Lifestyles Dev., LLC*, the same plaintiff alleged that a company called RCI was responsible for directly placing calls he received because the vacation property advertised on the call was listed on RCI's website. No. 419CV00006ALMCAN, 2019 WL 4282039, at *4 (E.D. Tex. Aug. 8, 2019). In recommending dismissal of the case on direct liability grounds, Magistrate Judge Nowak specifically pointed out that the Plaintiff did not allege that RCI initiated the call but rather that the "agent he spoke with represented that he was calling on behalf of Embassy Suites." *Id.* at *3. And Judge Nowak also found no vicarious liability because no factual allegations were made supporting a finding that RCI had control over the caller identifying itself as calling from Embassy Suites for a property listed on RCI's website. *Id.* at *5. The Court nevertheless granted leave to amend in *Lifestyles*. *Id.* at *6. And in *Cunningham v. Politi*, the Court did not address the issue of liability as it was never raised. No. 418CV00362ALMCAN 2019 WL 2517085, at *4 (E.D. Tex. Apr. 30, 2019).

The litany of other cases cited by the Defendant are likewise distinguishable, and none of them deal with a situation that is on all fours with this case. For starters, none of them address a situation as here, where the Defendant does not deny making the calls through one of its subsidiaries or discount the fact that one of its subsidiaries made the calls, but rather claims that it, as a holding company, did not make them. For instance, in *Sheski v. Shopify (USA) Inc.*, the plaintiff sued Shopify, an online shopping cart platform that allows sellers to add functionality using apps, for text messages sent by one of the add-on apps. No. 19-CV-06858-HSG, 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020). In *Aaronson v. CHW Grp., Inc.*, the defendant moved for judgment on the pleadings because the complaint contained no details "that would tend to identify defendant as the party" or any allegations as to how the defendant was identified. No.

10

1:18-CV-1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019). The other cases cited by the Defendant all deal with situations where the plaintiffs inadequately pled who placed the calls or had no information as to the caller, unlike here. And in almost all circumstances, the plaintiffs were either permitted to amend or engage in limited discovery as to liability and agency. Indeed, *Smith v. Vision Solar LLC* was amended and is pending class certification. *Smith v. Vision Solar LLC*, No. CV 20-2185, 2022 WL 1172985, at *3 (E.D. Pa. Apr. 20, 2022).

Furthermore, the Plaintiff has adequately alleged the calls were telephone solicitations because they were "telemarketing calls from Globe Life." (Am. Compl. ¶ 22). The nature of the three calls that Plaintiff *received* were simple – the calls were made to sell Globe Life brand insurance policies and attempted to sell the Plaintiff a Globe Life brand insurance policy. (Am. Compl. ¶ 23, 25). Only in the Defendant's world are those allegations unclear or otherwise insufficient. Defendant manufactures doubt through sheer speculation that any attempt to sell the Plaintiff life insurance did not occur on the calls Plaintiff received. Not so, as Plaintiff's declaration makes clear. (Lyman Dec.). The calls were made to sell him insurance. (*Id.*).

But even if this court were to assume *arguendo* that Globe Life committed none of the illegal conduct as alleged in the Plaintiff's complaint, such an allegation is not properly the subject of dismissing the complaint because it raises a factual dispute not properly brought at the pleading stage. The Middle District of Pennsylvania has refused to do so premised on nearly identical allegations and a self-serving affidavit, just as proffered here. *Shoemaker v. Zeitlin*, No. 1:21-CV-1668, 2023 WL 3826460, at *6 n.3 (M.D. Pa. June 5, 2023) ("Defendants argue the claims against Zeitlin should be dismissed for lack of personal jurisdiction because he purportedly has no connection to [the] entities in the amended complaint. . . . . Zeitlin's true relationship with the entities . . . are disputes of fact reserved for resolution by the trier of fact.").

11

Ultimately, the Plaintiff need not prove at this stage which one of Globe Life's many subsidiaries made the calls, whether or not they were authorized by Globe Life, or their precise connection to the Defendant in order to state a claim. To the extent that this court expresses doubt based on the Plaintiff's pleadings and well-pled factual allegations that the callers were identified by affirmatively identified themselves as calling from the Defendant, the Court must credit this testimony and permit discovery based on that fact.

Finally, the Plaintiff has pled direct liability on the part of Globe Life. As described above, the Court's analysis must begin and end with whether or not the Plaintiff has plausibly alleged the Defendant's direct involvement in the calls, which he has done. Requiring a putative TCPA plaintiff to allege more, such as requiring the Plaintiff to actually purchase the often substandard or downright fraudulent goods or services offered on a telemarketing call, would eviscerate the TCPA's protection and would simply allow defendants to run rampant with all manner of anonymous and unidentified calls. The Defendant's standard provides a perverse incentive for a caller to conceal their identity by making it impossible for any plaintiff to prove a claim against the defendant at the pleadings stage based on a lack of information and evidence. At the very least, if the Court expresses doubt as to the Plaintiff's allegations, this Court should nevertheless conclude that the facts pled here give rise to the inference of direct liability and permit discovery.

## V.  CONCLUSION

This Court must deny Defendant's motion to dismiss in its entirety. Alternatively, to the extent that the Court finds that additional questions remain, it should permit the Plaintiff to amend to correct the deficiencies or permit both jurisdictional and liability-based discovery, as necessary.

Dated: December 19, 2023

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong (E.D. Tex. # 333687PA)
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

December 19, 2023

*/s/ Andrew Roman Perrong*